IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02074-NYW-KAS

JHESHUA JACKSON,

    Plaintiff,

v.

CREDIT CONTROL, LLC, and
RICHARD G. SAFFER, CEO,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Motion to Dismiss** [#16][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#21][3] in opposition to the Motion [#16], and Defendant filed a Reply [#22]. The Motion [#16] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. §

---

[1] "[#16]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] In his Response [#21], Plaintiff states: "Please note that this letter is not intended to be an exhaustive response to your motion but rather an initial rebuttal to the arguments you raised." The Federal Rules of Civil Procedure and the Local Rules of this Court do not allow for the filing of multiple responses to motions. A party responding to a motion has "21 days after the date of service of a motion, or such lesser or greater time as the court may allow, in which to file a response." D.C.COLO.LCivR 7.1(d). Here, even were the Court to accept a second response from Plaintiff, the deadline for him to file one has passed. A pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#18]. The Court has reviewed these briefs, the entire case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#16] be **GRANTED in part and DENIED in part**.

## I. Background[4]

Defendant Richard G. Saffer ("Saffer") is the Chief Executive Officer of defendant Credit Control, LLC. *Compl.* [#15] at 4. Plaintiff alleges that Defendants contacted him and asserted that he owes a debt of $5,596.94 upon which they are trying to collect. *Id.* at 5. He states, however, that he does not owe any money to Defendants. *Id.* at 7. On March 7, 2023, he verbally requested a validation of the debt from "the counter defendant," and he requested a validation of the debt in writing from "the counter defendant" on March 10, 2023, and March 20, 2023. *Id.* at 5. He alleges that "Defendant failed to validate its claim" as required by law. *Id.* In addition, Plaintiff states that "Defendant has made false or factual[ly] incorrect claims or statements to various credit reporting bureaus or services against the plaintiff and misrepresented material facts about the disputed account." *Id.* at 6.

As a result of these allegations, Plaintiff explicitly asserts two causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA") and (2) violation of the Fair Credit Reporting Act ("FCRA"). *Id.* at 5-6. Plaintiff also *may* be asserting causes of action in connection with contract law and the Uniform Commercial Code ("U.C.C."), which the

---

[4] For the purposes of resolving the Motion [#16], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Complaint [#15]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Court discusses in Section III.B.1. below. Plaintiff seeks monetary and injunctive relief. *Id.* at 6. In the present Motion [#16], Defendants seek dismissal of all claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

At the outset, the Court notes that Defendants provide four documents which they argue the Court may consider when adjudicating the present Motion [#16] without converting it to a motion for summary judgment. *Motion* [#16] at 2 (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). The four documents are: (1) Credit Control's Initial Notice, sent to Plaintiff on February 15, 2023, *see Defs.' Ex. B* [#16-2]; (2) Dispute and Request for Validation Letter, received by Credit Control on March 16, 2023, *see Defs.' Ex. C* [#16-3]; (3) Dispute and Request for Validation Letter, received by Credit Control on April 11, 2023, *see Defs.' Ex. D* [#16-4]; and (4) Validation Response Letter, mailed to Plaintiff by Credit Control on March 17, 2023, *see Defs.' Ex. E* [#16-5]. *See Defs.' Ex. A, Decl. of Def. Richard Saffer* [#16-1] ¶ 3. For the following reasons, the Court declines to consider any of these documents.

"[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp.*, 130 F.3d at 1384. The only written documents to which Plaintiff explicitly refers in the Complaint [#15] are two written validation requests made on March 10, 2023, and March 20, 2023. *Compl.* [#15] at 5. The March 10, 2023 request appears to be Defendants' Exhibit C [#16-3], the Dispute and Request for Validation Letter, received by Credit Control on March 16, 2023, which was postmarked on March 10, 2023. Although the Court may therefore consider this document, the Court also finds that it has no material impact on the Motion's resolution, and therefore the Court declines to consider it.

The Complaint's reference to a March 20, 2023 validation request does not appear to have any obvious connection to the second validation request provided to Defendants, i.e., Exhibit D [#16-4], the Dispute and Request for Validation Letter, received by Credit Control on April 11, 2023. All relevant dates in Exhibit D are in April 2023. Thus, the Court finds that it may not consider this document in its adjudication of the Motion [#16] because Plaintiff does not appear to have referenced it in the Complaint [#15].

Defendants' Exhibit B [#16-2], the Credit Control's Initial Notice, sent to Plaintiff on February 15, 2023, *may* implicitly be referenced in the Complaint [#15] where Plaintiff states that Defendants have "unlawfully assert[ed] a claim that plaintiff owe[s] an alleged $5,596.84 in debt and that the defendant may collect assessment for such alleged debt." *Compl.* [#15] at 5. Regardless, the Court finds that it has no material impact on the Motion's resolution, and therefore the Court declines to consider it.

Finally, the Court finds that it may not consider Defendants' Exhibit E [#16-5], the Validation Response Letter, mailed to Plaintiff by Credit Control on March 17, 2023, because Plaintiff does not reference it in his Complaint [#15]. In fact, he affirmatively states that "Defendant failed to validate its claim," and refers to no other written communication from Defendants which could be construed to be this documentation. Thus, the Court finds that it may not consider this document in connection with the adjudication of the Motion [#16].

**A.     Defendant Saffer**

Defendant Saffer, CEO of Defendant Credit Control, LLC, is named in this action, but Plaintiff does not further mention him or allege any actions taken by him, in either the Complaint [#15] or the Response [#21]. "[T]o state a claim in federal court, a complaint

5

must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." See Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007). Plaintiff has not provided any specific allegations regarding any specific actions taken by Defendant Saffer.

Accordingly, the Court **recommends** that the Motion [#16] be **granted** to the extent that Plaintiff's claims against Defendant Saffer be **dismissed without prejudice**.

B.  **Defendant Credit Control, LLC**

1.  **Contract Law and the U.C.C.**

There appears to be some confusion regarding what specific claims are being asserted by Plaintiff, particularly with respect to contract law and the U.C.C. At one point in his Complaint [#15], he states that Defendants committed "[v]iolations of the following 1. FDCPA, 2. FCRA, 3. Contract Law (Restatement of Law Second Contract), [and] 4. U.C.C." Compl. [#15] at 3. A page later, he again mentions these four causes of action. Id. at 4. However, one page later again, in the formal, expanded statement of his claims, he mentions only the FDCPA and the FCRA. Id. at 5-6. In his Response [#21], Plaintiff implies that the contract and U.C.C. aspects of his lawsuit are part of his FDCPA claim. Response [#21] at 1 ("In my complaint, I have sufficiently alleged numerous violations of the FDCPA by Credit Control LLC, including but not limited to: . . . Contract law, C.R.S. Title 4 (U.C.C.)."). Plaintiff otherwise does not mention contract law or the U.C.C. in his Response [#21].

Even liberally construing Plaintiff's Complaint [#15], the allegations in support of such claims are exceedingly thin. For example, Plaintiff states, "there has never been any

6

exchange of any money or item of value between plaintiff and defendant"; "there is no contract in writing between the plaintiff and the defendants"; and "even if there exists an agreement, there is no evidence on the record that would support that the defendants are an assignee for the purported agreement." *Compl.* [#15] at 5. In short, the Complaint lacks clarity as to whether Plaintiff asserts separate breach of contract or U.C.C. claims, and, if so, what allegations are asserted in support of those claims. Under these circumstances, the Court finds that those claims, to the extent asserted at all, must be dismissed.

Accordingly, the Court **recommends** that the Motion [#16] be **granted** to the extent that Plaintiff's contract and U.C.C. claims, if any, be **dismissed without prejudice**.

### 2. FCRA

Plaintiff does not state which FCRA provision Defendants allegedly violated in either the Complaint [#15] or his Response [#21]. In fact, Plaintiff does not mention the FCRA in his Response [#21] at all. Defendants note the lack of specificity in Plaintiff's Complaint [#15] regarding any purported FCRA violation but they argue, even if the Complaint identified Defendants as furnishers of information under the FCRA, Plaintiff's claims still fail in the absence of "any allegations regarding any disputes that Plaintiff submitted to any consumer reporting agencies, which were subsequently relayed" to Defendants. *Motion* [#16] at 9-10.

"The FCRA imposes a host of requirements concerning the creation and use of consumer reports." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 335 (2016). For example, "[t]he FCRA requires covered entities to follow reasonable procedures to assure maximum possible accuracy of consumer reports, to notify providers and users of consumer information of their responsibilities under the Act, to limit the circumstances in which such

7

agencies provide consumer reports for employment purposes, and to post toll-free numbers for consumers to request reports." *Laufer v. Looper*, 22 F.4th 871, 876 n.2 (10th Cir. 2022) (internal quotation marks omitted) (quoting *Spokeo, Inc.*, 578 U.S. at 335).

The FCRA applies to three types of entities, with each having distinct responsibilities under the Act: credit reporting agencies ("CRA"), users of consumer reports, and furnishers of information to CRAs. *Ward v. Trans Union, LLC*, No. 21-cv-02597-LTB-SKC, 2023 WL 4330849, at * 3 (D. Colo. May 12, 2023). "A furnisher is an entity which transmits information concerning a particular debt owed by a particular consumer" to CRAs. *Id.* (citations and internal quotation marks omitted). In connection with this claim, Plaintiff alleges that "Defendant [sic] has made false or factual[ly] incorrect claims or statements to various credit reporting bureaus or services against the plaintiff and misrepresented material facts about the disputed account." *Compl.* [#15] at 6. Thus, Plaintiff appears to allege that Defendant Credit Control, LLC is the third type of entity, i.e., a furnisher of information to CRAs.

When a furnisher of information is notified of a dispute, the furnisher must, under 15 U.S.C. § 1681s-2(b) of the FCRA: "(1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable[.]" *Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x 744, 750-51 (10th Cir. 2009). Importantly, however, "[t]he furnisher's duty to investigate arises only after a CRA notifies the furnisher of a dispute and, conversely,

8

does not arise when notice is provided directly from a consumer." *Willis v. Capital One Corp.*, 611 F. App'x 500, 502 (10th Cir. 2015) (citations and internal quotation marks omitted). Here, Plaintiff provides no allegations that a *CRA* notified Defendant Credit Control, LLC of a dispute. Rather, Plaintiff's allegations only discuss *Plaintiff's* communications with Defendant Credit Control, LLC. *See, e.g.*, *Compl.* [#15] at 5, 7. Thus, Plaintiff's FCRA claim fails.

Accordingly, the Court **recommends** that the Motion [#16] be **granted** to the extent that Plaintiff's FCRA claim be **dismissed without prejudice**.

3.  **FDCPA**[5]

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute "limits how debt collectors can pursue certain types of debt and creates a private right of action when they violate those limitations." *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022); 15 U.S.C. § 1692k.

An FDCPA claim consists of four elements: "(1) the plaintiff is a 'consumer' under . . . § 1692a(3); (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under . . . § 1692a(6); and (4) through its acts or omissions, the defendant violated the FDCPA."

---

[5] The Court notes that, in addition to the FDCPA, Plaintiff mentions the Colorado Fair Debt Collection Practices Act in his Response [#21]. A cause of action based on this statute is not included in the Complaint [#15], and therefore the Court does not further address it here. *See, e.g.*, *Loma v. City and County of Denver*, No. 21-cv-02214-NYW-KLM, 2023 WL 2574377, at *7 n.7 (D. Colo. Mar. 20, 2023) (holding that a plaintiff may not use his response to amend the cause of actions asserted in the operative complaint).

*Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022). Only the fourth element appears to be in dispute in the present Motion [#16].

### a.     15 U.S.C. §§ 1692c, 1692e, and 1692f

In connection with the FDCPA, under the section of his Complaint titled "Summary of Claim for Judgment," Plaintiff states that Defendants violated "15 U.S. Code § 1692c, § 1692e, § 1692f, and § 1692g." *Compl.* [#1] at 5. 15 U.S.C. § 1692c concerns communications in connection with debt collection; § 1692e concerns false or misleading representations; § 1692f concerns unfair practices; and § 1692g concerns validation of debts. However, Plaintiff's statement of his FDCPA claim only appears to refer to a potential violation of § 1692g, given that he states that the FDCPA violation is based on his allegation that "Defendant failed to validate its claim as required" by the FDCPA. *Compl.* [#1] at 5. Thus, as with the potential breach of contract and U.C.C. claims discussed in Section III.B.1. above, the Complaint lacks clarity as to whether Plaintiff intends to assert violations of the FDCPA based on §§ 1692c, 1692e, or 1692f and, if so, what allegations support such violations. Under these circumstances, the Court finds that these claims, to the extent asserted at all, must be dismissed.

Accordingly, the Court **recommends** that the Motion [#16] be **granted** to the extent that Plaintiff's claims under §§ 1692c, 1692e, and 1692f of the FDCPA, if any, be **dismissed without prejudice**.

### b.     15 U.S.C. § 1692g

Plaintiff alleges that he thrice requested a validation of his debt from Defendant Credit Control, LLC, once verbally and twice in writing. *Compl.* [#15] at 5. The claim rests on Defendant Credit Control, LLC's purported failure to validate his claim in a timely

manner as required by the FDCPA. *Id.* 15 U.S.C. § 1692g(b) provides in relevant part: "If the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . , and a copy of such verification . . . is mailed to the consumer by the debt collector." The Court addresses Plaintiff's verbal request separately from his written requests, as the appropriate legal authority varies between these two types of requests.

### i.   Verbal Request

Plaintiff alleges that he "requested a validation of the purported debt verbally" by telephone from "the counter defendant" on March 7, 2023, around 1:30 p.m. *Compl.* [#1] at 5, 7. However, § 1692g(b) explicitly requires that the consumer notify the debt collector "in writing" when seeking debt validation to invoke the statute's protections. Courts considering this issue have affirmed the "in writing" requirement of § 1692g. For example, in *Robinson v. ACG Processing,* No. 17-cv-02725-MSK-STV, 2018 WL 4932025, at *6 (D. Colo. Oct. 11, 2018), the plaintiff asserted a § 1692g claim that the debt collector had failed to validate his debt "upon his verbal request." The Court dismissed the claim, noting that a debt collector only has a duty to validate a debt where written notice is made, not where only oral requests for validation of the debt were made. *Robinson*, 2018 WL 4932025, at *7. Here, too, Plaintiff's FDCPA claim cannot, as a matter of law, be premised on his verbal request.

Accordingly, the Court **recommends** that the Motion [#52] be **granted** to the extent that Plaintiff's § 1692g FDCPA claim, premised on his verbal validation request, be **dismissed with prejudice**. *See, e.g., Reynoldson v. Shillinger*, 907 F.2d 124, 127

(10th Cir. 1990) (holding that a pro se litigant's claims should not be dismissed with prejudice unless "further investigation and development" would be unlikely to "raise substantial issues").

### ii. Written Requests

Here, Defendants argue that they complied with all applicable requirements and provided appropriate debt verification to Plaintiff. *Motion* [#16] at 7-8. This assertion rests on Defendants' Exhibit E [#16-5], the Validation Response Letter, mailed to Plaintiff by Credit Control on March 17, 2023. *Id.* However, as discussed above, the Court may not consider Exhibit E in its adjudication of the present Motion [#16]. The Complaint [#15] alleges, in short, that Plaintiff timely notified Defendants in writing of his request for validation of the debt, and that Defendants "failed to validate" the debt in violation of the FDCPA. *Compl.* [#15] at 5. Given these circumstances, the Court finds that Defendants have not shown that Plaintiff has failed to state a claim upon which relief can be granted.

Accordingly, the Court **recommends** that the Motion [#52] be **denied** to the extent that Defendant Credit Control, LLC seeks dismissal of Plaintiff's § 1692g FDCPA claim. *See, e.g., Reynoldson*, 907 F.2d at 126-27.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#16] be **GRANTED in part and DENIED in part**. The Court **recommends** that the Motion be **denied** as to Plaintiff's § 1692g FDCPA claim against Defendant Credit Control, LLC, to the extent premised on written requests for validation. The Court **recommends** that the Motion otherwise be **granted** and that all other claims be dismissed as outlined above.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: October 26, 2023

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge